## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY MARK ANSTINE,

       Plaintiff,

    v.

JEROME MICHAEL ADAMS,
RODNEY R. AKERS, THERON R.
PEREZ, GREGORY G. SCHWAB,
JULIA A. SHERIDAN, and
MATTHEW J. UPDEGROVE,

       Defendants.

No. 1:20-CV-02160

(Chief Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 7, 2023

Plaintiff Timothy Mark Anstine, an attorney who formerly worked for the Pennsylvania Department of Community and Economic Development ("DCED") brings this action against several other attorneys working for the Commonwealth. Anstine was suspended and later terminated by his employer after a confidential investigation into his conduct. He now challenges his termination, arguing that it violated his Fourteenth Amendment right to due process because he was never given notice of the investigation or an opportunity to be heard before his termination. He also alleges that his termination violated state law. Defendants now move for summary judgment on all of Anstine's claims. For the following reasons, the Court grants Defendants' motion as to Anstine's due process claim and a related state-law

claim predicated on the alleged due process violation, and declines to exercise jurisdiction over Anstine's other state-law claims.

## I.    BACKGROUND

### A.    Underlying Facts

Anstine began working for DCED in 2003.[1] The letter informing Anstine of his appointment specified that he was an at-will employee in a non-civil service, management role.[2] At DCED, Anstine's role was to provide legal advice to several state agencies in the realm of economic development.[3] With approval from his employer, Anstine operated a private real estate brokerage and a title insurance agency while working for the DCED.[4]

Shortly after joining DCED, Anstine received an employee handbook.[5] He signed a notice confirming receipt of the handbook, which provided that the handbook "d[id] not create any employee rights or benefits" and "[was] not a contract" or an "invitation to contract."[6] The notice did point Anstine's attention to the "Commonwealth Personnel Rules" contained in Manual 505.7, which the notice stated set forth the "rights and benefits of employees."[7] Lastly, the notice indicated

---

[1]    *See id.*; Dep. of Timothy M. Anstine, Doc. 29-17 at 8:5-11.
[2]    Appointment Letter, Doc. 29-1; Anstine Dep., Doc. 29-17 at 9:10-10:22.
[3]    *See* Anstine Dep., Doc. 29-17 at 11:16-14:16.
[4]    *Id.* at 6:15-7:13.
[5]    DCED Employee Handbook Notice, Doc. 31-10.
[6]    *Id.*
[7]    *Id.*

that the Commonwealth had "sole discretion" to change any rules, policies, or directives regarding his employment.[8]

In April 2020, Defendant Rodney R. Akers contacted Anstine to schedule a conference call.[9] When Anstine called Akers, Defendants Julia Sheridan, Jerome Michael Adams, and Matthew J. Updegrove were all present on the call.[10] On the call, Updegrove informed Anstine that he was immediately being suspended from his job without pay pending a confidential investigation.[11] When Anstine asked why he was being suspended, Updegrove responded that Anstine was not entitled to that information at the time.[12] The substance of the conversation was confirmed in a letter sent to Anstine from Defendant Theron R. Perez, on behalf of Defendant Gregory G. Schwab.[13] In July 2020, Updegrove contacted Anstine to inform him that his services were no longer required at DCED.[14] Anstine received a confirmatory letter soon after.[15]

### B.   Procedural History

Following his termination, Anstine filed suit in this Court. He claims Defendants violated his Fourteenth Amendment procedural due process rights by

---

[8]   *Id.*

[9]   Anstine Dep., Doc. 29-17 at 32:8-11.

[10]   *Id.* at 32:12-15. Both Sheridan and Adams were OGC attorneys. Updegrove served as the Chief of the Division of Employee Relations in the Pennsylvania Office of Administration.

[11]   *Id.* at 32:16-23.

[12]   *Id.* at 33:4-1.

[13]   *Id.* at 33:18-34:4; April 22, 2020 Suspension Letter, Doc. 29-15. Schwab and Perez were OGC attorneys.

[14]   Anstine Dep., Doc. 29-17 at 35:7-36:1.

[15]   *Id.* at 37:9-18; July 10, 2020 Termination Letter, Doc. 29-16.

terminating him without notice or a hearing, depriving him of a property interest in continued employment (Count I); engaged in a civil conspiracy to violate his constitutional rights (Count II); intentionally interfered in his contractual relationship with the Commonwealth of Pennsylvania (Count III); and intentionally interfered with his attorney-client relationships with certain Commonwealth entities (Count IV).[16]

Defendants previously moved to dismiss Anstine's Complaint.[17] My former colleague, the Honorable John E. Jones III, then-Chief Judge of this Court, granted Defendants' motion in part, dismissing some of Anstine's claims.[18] Defendants now move for summary judgment on the rest of Anstine's claims.[19] Their motion has been fully briefed and is now ripe for disposition.

---

[16]   Compl., Doc. 1 ¶¶ 82-107 (Count I), 108-13 (Count II), 114-20 (Count III), 121-38 (Count IV).

[17]   MTD, Doc. 6.

[18]   May 24, 2021 Memorandum and Order, Doc. 15. Prior to Judge Jones' order, Anstine also alleged two state-law defamation claims. Compl., Doc. 1 ¶¶ 139-46 (Count V), 147-53 (Count VI). Judge Jones concluded that Defendants had sovereign immunity to intentional tort actions by virtue of the Pennsylvania Sovereign Immunity Act. *See* Doc. 15 at 23-24. He therefore dismissed Count V of Anstine's Complaint but did not address Count VI. *See id.* at 25. It appears that the parties understand Count VI to be dismissed, as indicated by Defendants' Answer, Doc. 16 ¶¶ 147-53, and the lack of any argument related to Count VI on Anstine's part. In any event, Judge Jones' reasoning for dismissing Count V applies with equal force to Count VI. *See* Doc. 15 at 23-24 (concluding that Defendants' communication of their concerns about Anstine's conduct to other Commonwealth officials was within the scope of their employment as supervisory attorneys for the Commonwealth). Therefore, the Court will dismiss Count VI on that basis.

[19]   MSJ, Doc. 28.

## II.   LAW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[22] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[23]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[24] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[25] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand

---

[20]   Fed. R. Civ. P. 56(a).
[21]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[22]   *Clark*, 9 F.3d at 326.
[23]   *Id*.
[24]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[25]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[26] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[27]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[28] a court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[29] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion."[30] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[31]

## III.   ANALYSIS

Anstine first alleges that Defendants violated his Fourteenth Amendment rights to procedural due process.[32] The Fourteenth Amendment of the United States Constitution provides in relevant part that "no State . . . shall deprive any person of life, liberty, or property, without due process of law." Title 42 U.S.C. § 1983 allows

---

[26] *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

[27] *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

[28] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[29] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[30] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[31] Fed. R. Civ. P. 56(c)(3).

[32] Compl., Doc. 1 ¶¶ 82-107.

private plaintiffs like Anstine to sue state actors for depriving them of their constitutional rights.

"In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."[33] "Protected liberty or property interests generally arise either from the Due Process Clause or from state-created statutory entitlement."[34] Once the plaintiff identifies a protected interest, "the question then becomes what process is due to protect it."[35]

Anstine identifies two potential property interests. First, he argues he has an interest in continued public employment, or at least an interest in having notice of the investigation into his conduct and an opportunity to respond before he was terminated.[36] Second, he argues he had an interest in receiving retirement benefits.[37] Defendants challenge both interests as invalid. For the following reasons, the Court agrees with Defendants.

---

[33] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)).

[34] *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 575 (1972)).

[35] *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

[36] Opp. Br., Doc. 32 at 14-16.

[37] *Id.* at 16-17.

### A.    Anstine Does Not Have a Property Interest In His Continued Employment With DCED

Defendants first argue Anstine has no property interest in his continued employment because he was an at-will employee.[38] "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, []he must have a legitimate entitlement to such continued employment."[39] Generally, at-will employees are not entitled to continued employment because they serve at the pleasure of their employers.[40] Public employees in Pennsylvania are considered at-will employees unless otherwise indicated by statute or by contract.[41] "In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception."[42]

Anstine does not identify a statute that grants him the right to continued employment. Instead, Anstine argues he had a contractual or quasi-contractual agreement with DCED granting him the right to continued employment based on

---

[38]   Defs' MSJ Br., Doc. 30 at 17-18.

[39]   *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Roth*, 408 U.S. 564).

[40]   *See, e.g.*, *id.* (citing *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988)).

[41]   *See id.* (citing *Scott v. Phila. Parking Auth.*, 166 A.2d 278 (1960)); *Cooley v. Pennsylvania Hous. Fin. Agency*, 830 F.2d 469, 471 (3d Cir. 1987), *abrogated on other grounds by Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991).

[42]   *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. 1997).

representations in the Commonwealth's personnel manual.[43] He also argues that the Pennsylvania Rules of Professional Conduct, which govern the conduct of Pennsylvania attorneys, constitute a public-policy exception to the at-will employment doctrine.[44] The Court begins its analysis by discussing the legal role employee handbooks and personnel manuals play in employment settings. Following that discussion, the Court will turn to Anstine's arguments.

### 1. The Contractual Significance of Employee Handbooks in Pennsylvania

To establish a right to continued employment, Anstine relies on Management Directive 505.7, a personnel manual that governs employees under the Governor of Pennsylvania's jurisdiction.[45] The Directive provides certain safeguards before employees are disciplined.[46] It generally provides that employee discipline should be "corrective and where possible, progressive in nature."[47] It also requires a "thorough and objective investigation" of the incident and notice to the affected employee before the imposition of discipline, as well as an opportunity for the employee to explain their actions.[48]

---

[43] *See* Opp. Br., Doc. 32 at 12-13. It is unclear whether Anstine argues for application of both theories or just one of them. The Court will consider both.
[44] *Id.* at 13-14.
[45] Management Directive 505.7, Doc. 31-35 at 1.
[46] *See id.* at 107.
[47] *Id.*
[48] *Id.*

Anstine argues that Management Directive 505.7 contractually entitled him to the above protections.[49] If he was not entitled to them by contract, Anstine argues Defendants were bound by their representations in the Directive.[50] Either way, Anstine maintains that Defendants failed to observe the above protections, depriving him of due process.[51]

In support of his argument that Management Directive 505.7 grants him a right to continued employment, Anstine cites to two decisions of the Commonwealth Court of Pennsylvania: *Appeal of Colban* and *Defrank v. County of Greene*.[52] Both *Colban* and *Defrank* involved local employees who were terminated in a summary fashion.[53] Both had received personnel manuals that their employers held out as the operative rules governing employee discipline and termination.[54]

In *Defrank*, the defendant-county argued that the manual was issued by a director who did not have the authority to promulgate procedures regarding the

---

[49]  Opp. Br., Doc. 32 at 11-12.

[50]  The parties dispute whether Management Directive 505.7 applies to non-civil service management employees like Anstine. *See* MSJ Br., Doc. 30 at 20. Defendants cite to their own deposition testimony that the Directive does not apply. *See* MSJ Statement of Facts ("SOF"), Doc. 29 ¶¶ 9-10. Anstine relies on the document he signed indicating his receipt of the DCED handbook, which states that "[t]he rights and benefits of employees are set forth in the Commonwealth Personnel Rules which are contained in Manual 505.7," which appears to be a precursor to Directive 505.7. *See* Opp. Br., Doc. 32 at 11 (citing DCED Employee Handbook Notice, Doc. 31-10). As the Court ultimately concludes that the Directive is not a legally binding document, it will assume without deciding that it applies to Anstine.

[51]  *See* Opp. Br., Doc. 32 at 12-13.

[52]  *Id.* (citing *Appeal of Colban*, 427 A.2d 313 (Pa. Cmwlth. 1981)); *Defrank v. County of Greene*, 412 A.2d 663 (Pa. Cmwlth. 1980)).

[53]  427 A.2d at 313; 412 A.2d at 664.

[54]  *See Colban*, 427 A.2d at 314 (manual provided for three warnings before termination); *Defrank*, 412 A.2d at 664-65 (manual provided for a hearing before Board of County Commissioners before termination).

hiring and termination of employees, as that power was reserved to the County Commissioners.[55] The court rejected that argument, concluding that the doctrine of equitable estoppel was appropriate as the plaintiff's expectation that the manual was valid was "fully reasonable" based on her employer's representations and actions.[56] In *Colban*, the court also applied the estoppel theory, concluding that the personnel manual's protections formed an "implicit" guarantee that an employee would not be terminated until the employer followed the procedures outlined in the manual, citing to *Defrank* in support.[57]

The Court notes that there appears to be some confusion in the law as to the continued vitality of *Defrank* and *Colban*. The Third Circuit, in *Lord v. Erie County*, explained that "a legitimate entitlement to continued employment cannot be premised on employee policies or disciplinary procedures alone."[58] Then, citing to *Defrank* and *Imdorf v. Public School Employees Retirement System*, the *Lord* court explained that "terms in an employee handbook are binding only when either the handbook itself or the employer's representation of it clearly indicate that the handbook is to have a binding effect."[59]

---

[55]   *Defrank*, 412 A.2d at 665.
[56]   *Id.* at 666.
[57]   *Colban*, 427 A.2d at 314.
[58]   476 F. App'x 962, 966 (3d Cir. 2012) (nonprecedential) (citing *Elmore*, 399 F.3d at 282-83)
[59]   *Id.* (quoting *Imdorf v. Pub. Sch. Emps. Ret. Sys.*, 638 A.2d 502, 505 (Pa. Cmwlth. 1994) (citing *Defrank*, 412 A.2d at 665-66). The *Lord* court went on to conclude that the employee failed to plausibly allege that her employee handbook bound her employer to only terminate her for cause. *See id.* at 966-67. In reaching that conclusion, the court noted the handbook itself denied it was a contract and provided that the employer had unilateral authority to change it. *See id.*

*Imdorf* rejected a claim by a public employee that certain terms in a retirement plan manual bound the defendant to act in a certain way.[60] The *Imdorf* court cited to *Martin v. Capital Cities Media*, a decision of the Superior Court of Pennsylvania, for the proposition that a private employer's handbook and representations about the controlling nature of handbook *could* bind the employer to act in accordance with the handbook's provisions.[61]

The *Martin* court extensively discussed the question, beginning with the long-standing tradition of at-will employment in Pennsylvania.[62] It noted that "Pennsylvania law holds that such handbooks are not legally binding on the employer who distributes them."[63] It cited other authorities suggesting that in certain unusual circumstances, an employee handbook could constitute an offer to change the terms of employment from at-will relationship to termination only on just cause.[64] The court gathered from those authorities that a handbook's provisions could constitute an offer of new employment terms if there was a clear manifestation of both the employer and employee's intent to change the terms.[65]

---

[60]  638 A.2d at 505.

[61]  *Id.* (citing 511 A.2d 830 (1986)).

[62]  *See* 511 A.2d at 834-38.

[63]  *Id.* at 835.

[64]  *See id.* at 836-37 (citing *Darlington v. Gen. Elec.*, 504 A.2d 306, 320 (Pa. Super. 1986) (Beck, J., concurring); *Banas v. Matthews Intern. Corp.*, 502 A.2d 637, 649 (Pa. Super. 1985) (Beck, J., concurring and dissenting); E.A. FARNSWORTH, CONTRACTS 532 (1982)).

[65]  *See id.* at 837. In *Martin*, the employer's personnel manager affirmatively stated that the "handbook set forth the terms of employment." *Id.* at 831. But even that was not enough for the *Martin* court, which concluded that the employer's statement did not make the manual part of the employment contract. *Id.* at 838-39. The court found it significant that the "employer

But a series of decisions from the Supreme Court of Pennsylvania cast doubt on *Martin*'s (and by extension, *Lord*'s) applicability to this matter. First, *Martin* involved a private employer and employee.[66] With respect to public employment, the Supreme Court of Pennsylvania in *Stumpp v. Stroudsburg Municipal Authority* held that a public entity cannot grant an employee the right to continued employment without statutory authorization.[67] The Supreme Court noted that "where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating."[68] Therefore, public employers without the power to grant tenure cannot do so by altering an employee's contract. Any effort to that effect would be invalid.

Although that would also appear to foreclose an employee's reliance on an employer's representation, the *Stumpp* court went further, commenting that "equitable estoppel has been affirmatively rejected by this Court as an exception to the at-will rule."[69] "Thus, the issue of whether [an employee] detrimentally relied on any promises of the [the employer] is simply not relevant in determining whether [the employee] has a protectable property interest in his employment."[70]

---

unilaterally distributed the handbook and retained the right to unilaterally alter the handbook at-will." *Id.* at 839.

[66]   *Id.* at 831.

[67]   658 A.2d 333, 334-35 (Pa. 1995) (citing *Scott*, 166 A.2d 278).

[68]   *Id.* (quoting *Scott*, 166 A.2d at 280-82).

[69]   *Id.* at 336 (citing *Paul v. Lankenau Hospital*, 569 A.2d 346, 348 (Pa. 1990)).

[70]   *Id.*

The Supreme Court applied its holding in *Short v. Borough v. Lawrenceville*, a case that bears some similarity to *Colban*, *Defrank*, and this matter.[71] In *Short*, a terminated public employee, relying on *Colban*, argued that her employer's personnel policy gave her "a reasonable expectation of continued employment with the guarantee that dismissal could occur only after due process of law."[72] The Commonwealth Court also relied on *Colban* to conclude that although the personnel policy did not grant the employee a contract right or reasonable expectation of continued employment, it did give her "a reasonable expectation that dismissal can occur only after due process."[73] On appeal, the Supreme Court rejected the Commonwealth Court's conclusion, citing to *Stumpp*.[74] As the Commonwealth Court's decision in *Short* largely relied on *Colban*, it appears that the Supreme Court overruled *Colban* and *Defrank* by implication.

Therefore, under Pennsylvania law, a public employer without the power to grant tenure cannot do so through either express or implied theories of contract. Accordingly, a public employee cannot rely on an employer's representations in employee handbooks about the continuing nature of their employment, regardless of how clearly they demonstrate an intent to offer the employee tenured status.

---

[71]   696 A.2d 1158, 1158 (Pa. 1997) (per curiam).
[72]   683 A.2d 1272, 1273-74 (Pa. Cmwlth. 1996) *rev'd by Short*, 696 A.2d at 1158.
[73]   *Id.*
[74]   *Short*, 696 A.2d at 1158 (citing *Stumpp*, 658 A.2d at 334-35).

As such, there appears to be tension between the Supreme Court's holdings in *Stumpp* and *Short* and the Third Circuit's observation in *Lord*, which also involved a public employee and employer.[75] Although none of the Pennsylvania cases *Lord* relied upon have been explicitly overruled, *Stumpp* and *Short* appear to foreclose their applicability to public employers without the statutory authority to grant tenure.

### 2. Management Directive 505.7 Does Not Grant Anstine Any Rights

In any event, although further guidance from our Court of Appeals would be helpful, the Court concludes that Anstine fails under both *Lord* and *Stumpp*. With the above principles in mind, the Court turns to Anstine's argument that Management Directive 505.7 granted him a contractual or quasi-contractual right to notice and a hearing or continued employment.

To the extent Anstine argues Management Directive 505.7 grants him any express contractual rights, the Court disagrees. First, it does not appear that DCED has the statutory authorization to offer Anstine continued employment. The Pennsylvania Legislature formed DCED from the prior Pennsylvania Department of Commerce and then transferred functions from other agencies to DCED.[76] Anstine was appointed as an attorney for DCED.[77] Under Pennsylvania's civil service

---

[75] *See Lord*, 476 F. App'x at 963.
[76] *See* Community And Economic Development Enhancement Act, P.L. 403 No. 58 (June 27, 1996), *codified at* 71 P.S. §§ 1709.101-1709.2106.
[77] *See* Anstine Appointment Letter, Doc. 29-1.

regulations, appointed attorneys are not civil service employees.[78] Any representation that he was entitled to continued employment—whether express or implied—is therefore irrelevant.[79]

But even if DCED was empowered to offer Anstine the right to continued employment, there are no facts in the record that suggest it did so expressly or impliedly. As the above decisions indicate, there must be a clear indication that the employer intended to change the terms of employment through provisions in a personnel manual.

Anstine fails to identify any evidence that "clearly indicates" that Management Directive 505.7 has a binding effect.[80] Here, like the employers in *Martin* and *Lord*, the Commonwealth retained the right to change any of its personnel rules—including Directive 505.7—at its sole discretion.[81] Anstine has not identified any other representation from DCED or the Commonwealth suggesting Directive 505.7 controlled the terms of his employment.[82]

---

[78]  Pennsylvania amended its civil service regulations in 2018, but the relevant provisions remained the same. *See* 71 P.S. § 741.3(c)(5), *repealed by* P.L. 460, No. 71 § 2 (providing that appointed attorneys are not civil service employees); *accord* 71 Pa. C.S. § 2103 (same).

[79]  *See Stumpp*, 658 A.2d at 336.

[80]  476 F. App'x at 966 (quoting *Imdorf*, 638 A.2d at 505).

[81]  *See Lord*, 476 F. App'x at 966-67; *Martin*, 511 A.2d at 838-39; DCED Employee Handbook Notice, Doc. 31-10.

[82]  Anstine points the Court's attention to Sheridan's deposition testimony that the OGC follows management directives. Response to Statement of Facts ("RSOF"), Doc. 31 ¶ 9 (citing Dep. of Julia Sheridan, Doc 31-31 at 90:8-20). Sheridan's after-the-fact statement is insufficient to show that DCED ever represented to Anstine that the Directive controlled the terms of his employment. *See Martin*, 511 A.2d at 838 (concluding that an employer's statement that the handbook "controlled" the terms of employment was insufficient).

With respect to Anstine's quasi-contractual argument, the Court reaches the same result for largely the same reasons. Anstine's reliance on Management Directive 505.7 as an extracontractual representation is no different than the estoppel theory the Supreme Court rejected in *Stumpp* and *Short*.[83] Therefore, Management Directive 505.7 is not an agreement to modify Anstine's at-will employment status.

### 3.   The Pennsylvania Rules of Professional Conduct Are Not a Public Policy Exception to the At-Will Employment Rule

Anstine lastly requests the Court modify Pennsylvania's long tradition of at-will public employment because the abrupt termination of government attorneys interrupts services to government clients.[84] Granting Anstine's request would be a monumental shift in Pennsylvania employment law and likely upset the internal dynamics of the Commonwealth's executive branch.[85] For those reasons, the Court declines Anstine's invitation.

Therefore, Anstine has failed to rebut the presumption that he is an at-will employee. As an at-will employee, he has no property interest in his continued public employment. Accordingly, to the extent he bases his due process claim (Count I) on a property interest in continued employment, it fails as a matter of law.

---

[83]   *See Stumpp*, 658 A.2d at 336 ("An employee may be discharged with o[r] without cause, and our law does not prohibit firing an employee for relying on an employer's promise." (quoting *Paul*, 569 A.2d at 348)).

[84]   Opp. Br., Doc. 32 at 13-14.

[85]   *Cf. Martin*, 511 A.2d at 838 (explaining that a judicial order changing an at-will employment relationship to a just-cause employment relationship "would be a modification of immense proportions").

### B.     Anstine Has No Protected Property Interest in His Retirement Benefits

Anstine next claims a protected interest in receiving retirement benefits through Pennsylvania's Retired Employees Health Program ("REHP").[86] Like an interest in continued employment, a person must "have a legitimate claim of entitlement" to a public benefit to claim a violation of procedural due process when they are denied the benefit.[87] For example, "a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process."[88]

Anstine was terminated just before his sixtieth birthday.[89] He claims—without any support—that his termination before his sixtieth birthday resulted in the loss of "retiree health benefits."[90] Anstine first fails to specifically identify what "retiree health benefits" he was entitled to. He further fails to identify any statutory or regulatory basis for his entitlement to retirement benefits beyond a general citation to the REHP program.

More fundamentally, Anstine had no entitlement to benefits by his own admission. He claims that he could only receive REHP health benefits if he reached

---

[86]   Opp. Br., Doc. 32 at 16-17.
[87]   *Roth*, 408 U.S. at 577.
[88]   *Id.* at 576 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).
[89]   RSOF, Doc. 31 ¶ 15.
[90]   *Id.*; *see also* Compl., Doc. 1 ¶¶ 79-80.

the age of sixty while still working for the Commonwealth.[91] As he was validly terminated before his sixtieth birthday, he was never entitled to the benefits accompanying his job to begin with.[92] "[A]n employee has no protected interest in a benefit if the government has ample discretion to deny that benefit."[93] As established above, the Commonwealth had the discretion to terminate Anstine because he was an at-will employee. Implicit in that discretion is the ability to deny Anstine the benefits of public employment that he was not already legally entitled to. Anstine fails to establish any "mutually explicit understanding" that he was entitled to REHP benefits before his termination.[94]

That Anstine blames Defendants for his ineligibility is irrelevant as to whether he was denied procedural due process.[95] His argument is akin to a claim that an intervening change in benefit eligibility standards denied a potential beneficiary due process. The potential beneficiary was never eligible for those benefits; he was

---

[91]   RSOF, Doc. 31 ¶ 15; Compl., Doc. 1 ¶¶ 79-80.

[92]   That serves to distinguish this matter from *Ransom v. Carbondale Area School District*, 982 F. Supp. 2d 397 (M.D. Pa. 2013), which Anstine relies on in his brief. Opp. Br., Doc. 32 at 16-17. In *Ransom*¸ my colleague, the Honorable Robert D. Mariani, held that a bus driver plausibly alleged a procedural due process claim where the school district summarily revoked her certification to drive for the district, analogizing the certification to a driver's license. *See id.* at 402-03. The key distinction is that the bus driver already had her certification before the school district revoked it. By contrast, Anstine was not eligible for REHP benefits when he was terminated.

[93]   *Tundo v. County of Passaic*, 923 F.3d 283, 287 (3d Cir. 2019) (citing *Anderson v. City of Philadelphia*, 845 F.2d 1216, 1221 (3d Cir. 1988)).

[94]   *Id.*

[95]   Anstine appears to claim Defendants knew he was going to work past sixty based on his statements to others in the DCED. *See* Compl., Doc. 1 ¶¶ 32-35. But Defendants' knowledge does not somehow entitle Anstine to benefits.

only *potentially* eligible for them. Because the potential beneficiary never became eligible, he was never entitled to them.[96] Likewise, because Anstine was validly terminated before becoming eligible for REHP benefits, he was never entitled to them. Therefore, Anstine's due process claim (Count I) must fail as a matter of law. As Anstine's state-law civil conspiracy claim (Count II) is premised on his allegation that Defendants violated his due process rights, it fails as well.[97]

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Anstine's Remaining State-Law Claims

As noted above, in addition to the due process claim, Anstine brings two state-law claims against Defendants for their alleged intentional interference in his contractual and attorney-client relationships.[98] But Count I, Anstine's due process claim, is the only claim over which the Court has original jurisdiction.[99] The Court had supplemental jurisdiction over his other claims as they all arose from the same controversy.[100]

Title 28 U.S.C. § 1367(c)(3) "provides that '[a] district court may decline to exercise supplemental jurisdiction over a claim'" if "the district court has dismissed all claims over which it has original jurisdiction."[101] The Court must determine

---

96 *Cf. Lyng v. Payne*, 476 U.S. 926, 942 (1986) ("We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment.").

97 *See* Compl., Doc. 1 ¶¶ 108-13.

98 Compl., Doc. 1 ¶¶ 114-20 (Count III), 121-38 (Count IV).

99 *See* 28 U.S.C. § 1331.

100 28 U.S.C. § 1367(a).

101 *Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000) (quoting 28 U.S.C. § 1367(c)(3)).

whether exercising supplemental jurisdiction is appropriate, considering "judicial economy, convenience and fairness to the litigants."[102] Given the language of section 1367(c)(3), it appears that dismissal of state-law claims is appropriate on the sole basis that the federal claims have been dismissed.[103]

The Court has dismissed Anstine's due process claim—the only claim over which it had original jurisdiction. As for economy, convenience, and fairness, the Court recognizes that the parties have invested a considerable amount of time and resources in this matter. The Court appreciates their investment. But dismissal of supplemental claims is the risk federal plaintiffs run when they choose to file in courts of limited jurisdiction.[104]

Indeed, the Third Circuit affirmed an order of this Court, issued by the late Honorable Malcolm Muir in *Annulli v. Panikkar*, declining to exercise jurisdiction in a case with "1,800 pages of deposition testimony, and 2,800 pages of discovery

---

[102] *New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).

[103] *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("Here, the District Court plainly recognized its discretion to retain jurisdiction over [the plaintiff's] remaining state-law claims but, having dismissed all of her federal claims, declined to do so for a reason that Congress explicitly green-lighted under these circumstances."). The Court may also decline jurisdiction pursuant to section 1367(c)(1), which provides that a court may decline jurisdiction if the remaining claims "raise[] a novel or complex issue of State law." With respect to his intentional interference claims (Counts III and IV), Anstine asks the Court to determine whether an attorney-client relationship exists between an individual attorney working for the Commonwealth and the Commonwealth entity that the attorney advises. *See* Opp. Br., Doc. 32 at 6-10. The Court believes it best that the Pennsylvania courts address this matter as it implicates the Commonwealth's internal practices.

[104] *See Annulli*, 200 F.3d at 202-03 (collecting cases in which courts dismissed supplemental claims in situations similar to this matter).

documents" where the defendants filed their motion for summary judgment on the eve of trial.[105] As was the case in *Annulli*, Anstine can use all of the evidence currently in the record to litigate his claims in state court. Accordingly, the Court finds it appropriate to decline supplemental jurisdiction over Counts III and IV.[106]

## IV.   CONCLUSION

A valid procedural due process claim begins with a valid protected interest. Anstine has no protected interest in his continued employment or his potential receipt of retirement benefits. Therefore, summary judgment is appropriate on both his claim that he was denied due process when terminated and his claim that Defendants conspired to violate his due process rights.

As Anstine's remaining state-law claims raise complex issues of Pennsylvania law regarding how Commonwealth attorneys interact with other arms of the Commonwealth's government, the Court will decline to exercise supplemental jurisdiction over those claims and dismiss them.

An appropriate Order follows.

BY THE COURT:

s/ *Matthew W. Brann*

---

[105] *Id.*

[106] *See id.* at 203 (noting that the plaintiff could use the same evidence to pursue its claims in state court).

Matthew W. Brann
Chief United States District Judge